**UNITED STATES of America, Plaintiff,**

v.

**Lester David HESTAD, Defendant.**

**No. CR–65–51.**

United States District Court.
W. D. Wisconsin.

Nov. 10, 1965.

Michael J. Wyngaard, Asst. U. S. Atty., Madison, Wis., for plaintiff.

Victor V. Blackwell, Covington, La., for defendant.

JAMES E. DOYLE, District Judge.

This action came on for trial to the court, without a jury, on October 12, 1965. Testimony was received and documentary evidence introduced. Arguments of counsel were heard.

At the close of plaintiff's case, defendant offered a motion for judgment of acquittal, in writing. This motion rests upon several grounds: (1) that the denial of the 4–D classification by the local board and all administrative agencies was without basis in fact, arbitrary and contrary to the Selective Service Act and regulations thereunder; (2) that the denial of the 4–D classification by the local board and other administrative agencies reflected a failure to apply the statutory and regulatory definition of a minister and also reflected discrimination against the particular religion of defendant; (3) that the denial of the 4–D classification violated both procedural and substantive due process guarantees of the Fifth Amendment in that the record contains no evidence to contradict defendant's claim of minister's status, nor any proof incompatible with defendant's claim of minister status; (4) that the procedural and substantive due process guarantees of the Fifth Amendment were also violated by the arbitrary refusal of the local board to reopen and consider anew defendant's classification on December 14, 1964, and on prior occasions, despite new evidence submitted by defendant; and (5) that the government had wholly failed to prove defendant guilty beyond a reasonable doubt. The court took this motion under advisement.

The court finds, from the entire record, that at Barron, Barron County, in the Western District of Wisconsin, on January 7, 1965, defendant did knowingly fail and neglect and refuse to obey an order dated December 18, 1964, of Local Board No. 3, Barron County, Wisconsin, to report for civilian work at Mt. Sinai Hospital, Milwaukee, Wisconsin.

Defendant's complete selective service file was received in evidence. Defendant's classification questionnaire, received by the local board December 1, 1963, showed that he was then employed as a substitute mail carrier, at $2.26 per hour, working "irregular hours; no difinite [sic] average." He showed his "other business or work" as "ministerial-minister of religion", and stated that he had been a minister of Jehovah's Witnesses since July 14, 1962. He also claimed exemption as a conscientious ob-

jector. He stated that he spent considerable time studying the Bible, in training for door to door preaching and for public lecturing, and in teaching; he did not state the relative amounts of time he spent in his secular employment and in his religious work. He claimed 4–D classification as a minister.

Documents received from defendant by the local board December 4, 1963, generally corroborated that his fellow Jehovah's Witnesses considered him a minister.

In a "special form for conscientious objector" prepared by defendant and received by the local board December 11, 1963, he showed his employment as "sub. mail carrier", but also stated that he had been ordained a minister as one of Jehovah's Witnesses. No additional information as to the apportionment of his time and effort was provided.

On December 16, 1963, the local board classified defendant as a conscientious objector (1–O) and denied him a classification as a minister (4–D).

To a notice of appeal dated December 24, 1963, and received by the local board December 31, 1963, defendant attached a more detailed description of his religious studies and work, but it failed to contain an explicit comparison of the time he spent on secular and religious work.

■ On this record the court finds that on December 16, 1963, when the local board classified defendant as a conscientious objector (1–O) and denied him a classification as a minister (4–D), and on January 29, 1964, when the appeal board also classified him 1–O and denied him 4–D, there was a basis in fact for the conclusions:

That defendant's religious activity was not his regular and customary vocation;

that he irregularly and incidentally preached and taught the principles of religion of his sect; and

that he did not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship of his sect.

Therefore, the December 16, 1963, action of the local board and the January 29, 1964, action of the appeal board will not be disturbed in this action. The issue arises from events subsequent to January 29, 1964.

On March 23, 1964, the local board received additional letters from the presiding minister and the ministerial assistant of the Rice Lake Congregation of Jehovah's Witnesses, attesting to defendant's sincerity and to the duration of his connection with the group and to the religious responsibilities he had assumed, but not containing an explicit comparison of the time spent in his secular and religious activities.

On June 30, 1964, the local board received a "current information questionnaire" from defendant in which he stated that he was no longer employed by the post office, that he then had no secular job, and that he would be devoting his time to "teaching of the doctrines of the religion of which I am a minister." A "special report for class 1–O registrants", received by the local board July 27, 1964, showed that defendant's secular employment had been terminated June 27. A printed "current information questionnaire" sent to the defendant October 8, 1964, contained a handwritten notation (presumably by the secretary of the local board) directing defendant to "show time devoted to employment and time—ministerial activities." Defendant's response, received by the local board October 19, 1964, was that he was "unemployed" and that he was spending "over 50 hours per week in the ministry * * * in door-to-door ministry, attending and participating in Bible study classes, preparation for classes and ministry, and in personal study and meditation."

A local board meeting attended by defendant and by a George Ellis, a representative of the state director, was held November 16, 1964. The summary of this meeting prepared by the clerk shows that the defendant requested a 4–D classification, that he was working full time

in his ministry, that he was devoting about 200 hours per month to his ministry, that he had previously had a secular job, that he would have a 12 hour per *week* job shortly thereafter, and that he was not recognized by Jehovah's Witnesses as a "Pioneer". The clerk's notes contain the following:

"Q. Board general in every CO's and the nation. Do to have Pioneer Certificate or higher for a 4-D. (Neby)."

Neby was a member of the local board at the time. Defendant stated that he was preparing additional information to file; and that he had quit a lucrative job and was devoting his time as a minister. Defendant's written account of the November 16 meeting, received by the local board November 19, stated that he had reported spending over 200 hours per month in the ministry and only 10-12 hours per month (probably intended to be "week") on a secular job; he acknowledged having said that "at present" he did not have a "certificate of regular pioneer."

On November 16, presumably following the meeting attended by defendant and Mr. Ellis, the local board reviewed defendant's case, and decided that he should be ordered to perform civilian work at Mt. Sinai Hospital in Milwaukee. The file does not reflect an explicit refusal to reopen defendant's classification; such a refusal is implicit in the action which is recorded.

Between November 16, 1964, and December 14, 1964, defendant furnished the following material to the local board:

(a) Letters from a "literature and book study supervisor of Jehovah's Witnesses" in Ogden, Utah, and from other Jehovah's Witnesses, stating that defendant was spending over 100 hours per month in door-to-door missionary work, in addition to other duties described.

(b) A certificate from the Watchtower Society dated July 2, 1964, stating that defendant had been appointed a vacation pioneer minister from July 15, 1964, to August 14, 1964.

(c) A certificate from the Watchtower Society dated August 17, 1964, stating that, considering defendant's service activity for the previous six months, he did not meet the pre-entrance requirements for "regular pioneer service", but extending his "vacation pioneer appointment through November 30, 1964."

(d) A letter from a certain gentleman in Utah, dated December 3, 1964, stating that defendant had been employed by him "during the past months" as a janitor, "on a part time basis, Thursday evenings and Saturday afternoon", and that defendant's "vocation is the ministry."

(e) A letter from defendant explicitly requesting that his classification be reopened, stating that he was no longer employed at a full time secular job and that he was spending at least 50 hours per week in the ministry.

(f) A detailed daily breakdown of defendant's time, fully supporting his more general assertions and showing about 11½ hours per week devoted to secular work.

(g) A post office departmental form dated June 19, 1964, showing that he had resigned effective June 27 "to devote full time to being an ordained minister."

(h) A letter from defendant dated December 14 stating that defendant was then "instructor or presiding minister at our Theocratic Ministry School and also the presiding minister at one of the Congregation Book Studys held in the Ogden, Utah area." He explained that documentary evidence of these assignments was in the holiday mail between Utah and Wisconsin. He stated that his appointment as a (vacation) pioneer minister which ended November 30 would again be resumed and in force by January 1, 1965, and that his "application for the regular pioneer service was made out and handed to the Congregation Overseer during the first week of Nov."

At its December 14, 1964, meeting, the local board determined that the information submitted by defendant did not warrant reopening the classification of 1-O, and refused to reopen it. On December 18 the order to report for civilian work on January 7, 1965, was mailed to defendant.

Letters of December 22, 1964, from defendant to the State Director, summarizing the additional information which he had furnished the local board and requesting intervention, evoked a reply on December 31, 1964, that the local board had not abused its discretion and that no appeal to the President would be made by the State Director. The file reveals no reply to a similar letter from defendant to national headquarters of Selective Service, dated January 4, 1965.

The question is whether the local board abused its discretion in refusing to reopen defendant's classification on either November 16, 1964, or December 14, 1964, or both. The court is obliged to conclude that the refusal on December 14 was arbitrary; it is unnecessary to express an opinion with respect to the November 16 refusal.

Part 1625 of the regulations of the Selective Service System deals with reopening and considering anew a registrant's classification. It recognizes that "no classification is permanent." 1625.1. Prior to the mailing of an order to report for civilian work (in this case, December 18, 1964), the local board may reopen and consider anew a registrant's classification upon the registrant's written request, "if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification * * *." 1625.2. The local board shall not reopen the classification if it is "of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, * * * that such facts, if true, would not justify a change" in classification. 1625.4. When

the local board does reopen the classification, even though it then places the registrant in the same class as previously, this has the effect of a new classification (1625.11), including a new opportunity to appear before the local board and to appeal (1625.13).

Clearly, in the present case, by December 14, 1964, defendant had presented many facts "in addition to those considered when the registrant was classified" by the local board on December 16, 1963, and by the appeal board on January 29, 1964. Therefore, the issue is whether it was arbitrary for the local board to conclude, as it must have, that these additional facts, "if true, would not justify a change" in defendant's classification.

This issue is controlled by United States v. Ransom, 223 F.2d 15 (C.A.7th, 1955). There, as here, the local board refused to reopen a 1-O classification despite uncontroverted evidence produced by the registrant making out a prima facie case for the requested classification of 4-D. As of December 14, 1964, the record here contained nothing to contradict this prima facie case. The local board undertook no further investigation to test the validity of the prima facie case. In short, there was no basis in fact in the record for the local board's refusal to grant the requested classification. Ransom holds that just as there must be a basis in fact for the initial denial of the 4-D classification, so there must be a basis in fact for the local board's refusal to reopen the classification and for its refusal then to grant the requested classification. See United States v. Scott, 137 F.Supp. 449 (E.D. Wis., 1956).

This record suggests, but does not make explicit, a theory which may have led the local board and the state headquarters of Selective Service to conclude that a prima facie case for ministerial classification had not been made out by this defendant. This theory is that only a "regular pioneer", as distinguished from a "vacation pioneer", in the Watchtower Society is entitled to 4-D classification. That this theory may have been

entertained is indicated by two items in the record.

The first is the rather opaque notation by the secretary of the local board in connection with the November 16, 1964, meeting:

"Q. Board general in every CO's and the nation. Do to have Pioneer Certificate or higher for a 4–D. (Neby)."

The second is to be found in a sequence which occurred after December 18, 1964, the critical date on which the order to report on January 7, 1965, was mailed to defendant. On January 4 the local board received from defendant further materials, including a certificate from the Watchtower Society dated December 14, 1964, stating that, considering his service activity for the previous six months, he did not meet the requirements for "the regular pioneer service" because his "back-calls and Bible studies" had been "very low." It should be noted that this certificate does not contradict defendant's claim that he was devoting more than 200 hours per month to his religious work, but only that he had failed to meet two specific requirements, namely those relating to "back-calls" and Bible studies. The same certificate extended his appointment to "vacation pioneer service" through April 30, 1965. On May 7, 1965, the local board received from the defendant a further certificate from the Watchtower Society dated April 23, 1965, stating that defendant had been "appointed to serve as a regular pioneer minister" as of May 1, 1965. A letter to the local board from the Administrative Officer in the state headquarters dated May 12, 1965, states: "Since his [defendant's] appointment as a Pioneer Minister was not effective until after he did not report for civilian work, no action is required by your Local Board at this time." It may well be, as regulation 1625.2 states and as the plaintiff contends, that in this prosecution the validity of the local board's refusal on December 14, 1964, to reopen defendant's classification may not be challenged by reliance on subsequent events, such as his April 23 appointment as a "regular pioneer minister." However, the Administrative Officer's letter of May 12 supports the conclusion that the local board believed that a "regular pioneer minister", "or higher", is entitled to 4–D classification, but that other members of Jehovah's Witnesses are not. (It may be noted that in Ransom, the defendant was a "pioneer minister", whether "regular" or "vacation" the opinion does not reveal.)

■ If such a standard was applied by the local board, and perhaps endorsed by the state headquarters, it was incorrect. The Selective Service Act defines "duly ordained minister of religion" (50 App., U.S.C., sec. 466(g) (1), (2), (3)) for the purpose of exemption from training and service (50 App., U.S.C., sec. 456(g)). The regulations reflect these statutory definitions. 1622.43. The administrators and the courts properly insist that these statutory definitions govern. They properly reject the contention that a member of Jehovah's Witnesses is entitled to 4–D classification simply because his sect considers each of its members a "minister". It would be equally improper for a local board to look solely to whether the sect considers one of its members a "regular pioneer minister", and thus to avoid the necessity of testing the specific facts of each case by the statutory standard.

■ Here the record revealed, without contradiction, that in June, 1964, defendant had resigned from part-time secular employment with the post office; that by December 14, 1964, he was employed as a janitor about 11–12 hours per week; and that he was spending over 200 hours per month in his religious work, which was described in detail. He produced evidence that he had been appointed a "vacation pioneer minister", but did not rely solely on this certificate of appointment. Cf. United States v. Diercks, 223 F.2d 12 (C.A.7th, 1955). It was error for the local board to ignore this uncontroverted evidence on December 14, 1964. It was error to rely solely on the absence of a "regular pioneer" appointment, if in fact

the local board did so rely. This failure to reopen the classification on December 14, 1964, violated the due process guaranteed by the Fifth Amendment.

For the reasons given, upon the basis of the entire record herein, and on the specific ground that the local board erred on December 14, 1964, in refusing to reopen defendant's classification, the Court finds and adjudges defendant not guilty of the crime charged in the information.