**UNITED STATES of America, Plaintiff,**

v.

**Lionel Eric SIMMS, Defendant.**

United States District Court
D. Delaware.
May 22, 1968.

John P. Brady, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Nicholas H. Rodriguez, Schmittinger & Rodriguez, Dover, Del., for defendant.

## OPINION

LAYTON, District Judge.

On August 29, 1967, the Grand Jury returned an indictment charging that Lionel Eric Simms had knowingly failed to report for civilian work in lieu of induction into the Armed Forces pursuant to an order of Local Board No. 2, of the Selective Service System, Georgetown, Delaware, in violation of 50 App. U.S.C. § 462.

The case came on for trial to the Court, without a jury, on February 1, 1968. At the close of the government's case and again at the close of the trial, the defendant moved for a judgment of acquittal. The motion was taken under advisement, briefs were filed, and oral argument was heard on March 19, 1968.

The Court finds [1] that the defendant Lionel Eric Simms did knowingly fail and neglect to obey an order dated May 23, 1967, of Local Board No. 2, the Selective Service System, Georgetown, Delaware, to report for civilian work at Delaware State Hospital, Farnhurst, Delaware. The issue in this case is solely whether the order to report was lawful, thus making the defendant's failure to obey the order a violation of 50 App.U.S.C. § 462.

The defendant contends that the order of Local Board No. 2 was unlawful for several reasons:

1. That the denial of a IV-D classification by the Local Board and the Delaware Appeals Board was without basis in fact;

2. That the denial of the IV-D classification by the Local Board and the Delaware Appeals Board reflects a failure to apply the statutory and regulatory definition of minister and also reflects discrimination against the particular religion of the defendant;

3. That the denial of the IV-D classification violated both the procedural and substantive due process guarantees of the Fifth Amendment in that the record contains no evidence to contradict defendant's claim of minister status nor

1. In open court at the commencement of the defendant's trial, the following stipulation entered into between the defendant and the United States was made a matter of record:

"For purposes of trial in the above stated criminal action, charging the defendant with violation of 50 United States Code App., Section 462, it is hereby stipulated and agreed upon by John P. Brady, Assistant United States Attorney, and Nicholas H. Rodriguez, attorney for the defendant, that the defendant, Lionel Eric Simms, admits the following facts:

1. The Selective Service System, by and through Local Board No. 2, Georgetown, Delaware, classified the defendant 1–O as a conscientious objector on January 15, 1965; and

2. The Appeal Board for the State of Delaware affirmed the defendant's classification of 1–O, conscientious objector, on October 24, 1966; and

3. The defendant, Lionel Eric Simms, by order of Local Board No. 2, Georgetown, Delaware, dated May 23, 1967, was directed to report to Local Board No. 2, Georgetown, Delaware, at 8:30 A.M. on June 8, 1967 to receive instructions to proceed to Delaware State Hospital, Farnhurst, New Castle, Delaware, to perform civilian work contributing to the maintenance of national health, safety, or interest; and

4. The defendant, Lionel Eric Simms, knowingly failed to report to Local Board No. 2, Georgetown, Delaware, as ordered to receive instructions and, also, knowingly failed to proceed to and report to Delaware State Hospital, Farnhurst, New Castle, Delaware, for employment on June 8, 1967 and, to date, has failed to so report as ordered."

proof incompatible with defendant's claim;

4. That the procedural and due process guarantees of the Fifth Amendment were also violated by statements made by the State Director of Selective Service when the Director appeared at two meetings of Local Board No. 2;

5. That the defendant was not apprised of his Constitutional right to the assistance of counsel at a critical stage in the proceedings against him, and of his right to call and examine witnesses; and,

6. That the government had failed to prove the defendant guilty beyond a reasonable doubt.

The facts as to the events throughout the proceedings before the Local Board and the Appeals Board are essentially not in dispute. The defendant registered with Local Board No. 2 of the Selective Service System in Georgetown, Delaware, on December 31, 1964. On his Classification Questionnaire, the defendant listed his occupation as going to barber school and he claimed exemption from military service as a conscientious objector, stating that he was a member of the Jehovah's Witnesses religion.

The Local Board gave the defendant the Special Form for Conscientious Objectors which the defendant completed. On the basis of the information contained in the form, the defendant was classified I-O, a conscientious objector, available for civilian work, on January 15, 1965. Defendant was ordered to report for an armed forces physical examination on June 24, 1965; he did so report and was found to be physically acceptable for service. The remaining relevant facts will be related in connection with the various points raised by the defendant.

■ The scope of review in Selective Service cases is particularly narrow. It is limited to a consideration of the record before the Local Board to determine (1) whether there was a basis in fact for the Board's denial of the classification

sought by the registrant at the time that the classification was considered and (2) whether the Board's decision was made in conformity with the statute, 50 App. U.S.C. and the regulations, 32 C.F.R. Part 1600. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Zieber, 161 F.2d 90 (C.A. 3, 1947).

Defendant's request for a ministerial exemption, that is a IV-D classification, was considered on four occasions—on May 18, 1966, June 22, 1966 and August 17, 1966 by Local Board No. 2 and on October 24, 1966, by the Delaware Appeals Board. Defendant provided additional information to the Local Board as to his Jehovah's Witnesses activities by letter on December 14, 1966 and in person on February 15, 1967.

■ In searching the record for a basis in fact, the initial determination is whether the registrant made a prima facie case for a classification lower than that which the Board awarded him, and if so, whether there is any proof in the record incompatible with the registrant's proof of exemption. 32 C.F.R. § 1623.2. Dickinson v. United States, supra.

The Universal Military Training and Service Act[2] provides:

"456(g) Regular or duly ordained ministers of religion, as defined in this title [sections 451–454 and 455–471 of this Appendix], and students preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools, or who are satisfactorily pursuing full-time courses of instruction leading to their entrance into recognized theological or divinity schools in which they have been pre-enrolled, shall be exempt from training and service (but not from registration) under this title [said sections]."

2. Now known as the "Military Selective Service Act of 1967."

"466(g) (2) The term 'regular minister of religion' means one who as his cutomary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister."

"466(g) (3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

The showing made by the registrant as of May 18, 1966, the first occasion on which his request for a IV-D classification was considered by the Local Board, consisted of the following material:

1. Statements from the Special Form for Conscientious Objectors completed by the registrant,

   (a) That he had begun studying Bible with one of Jehovah's Witnesses in 1956; that he had begun to attend Congregational meetings of Jehovah's Witnesses in 1957 and that he had been receiving five hours of Bible instruction per week since 1959;

   (b) That he had become a member and "Ordained Minister" of Jehovah's Witnesses on February 1, 1964, after being baptized in a public ceremony on that date;

   (c) That the registrant regularly preached the principles of Jehovah's Witnesses from door to door and that he regularly spent five hours per week with the other members of his congregation in Kingdom Hall, Seaford, Delaware, a Jehovah's Witnesses Church;

2. A letter from the registrant to the Local Board returning the uncompleted special form for civilian work, which letter reads:

"To Local Board No. 2

"I believe in a Supreme Being whom the Holy Bible calls Jehovah God.—Ps. 83:18 Jehovah requires exclusive devotion, Ex. 20:5. I believe that God's law comes first, that he require allegiance above all nation on earth.—Mark 12:17

"Because I am a ordained minister of Jehovah, the preaching activity of Jehovah's ministers entitles me to claim exemption from performing military training and service in the armed forces of the nation in which I dwell. The exempt status of Jehovah's witnesses also relieves me of performing governmental work required of men who conscientiously object to both combatant and noncombatant military service, because Jehovah's witness are ministers of the gospel and are no political, academic, or religious pacifists. I claim neutrality. John 18:36

Lionel Simms"

Tested against the requirements of the Statute, the showing made by the defendant as of May 18, 1966, is so deficient as to warrant little discussion. The material fails to indicate in any way that the ministry was the registrant's regular vocation.

The registrant's classification was next considered on June 22, 1966. At this time, the registrant's file had been supplemented by facts which he had offered at a personal appearance before the Local Board on June 1, 1966. The additional material advised that in addition to his ministry work, the defendant was working as a barber clearing approximately $30 per week and that he would write the Watchtower Society for con-

firmation of the fact that he would soon be a Pioneer Minister.[3] The Court finds that as of June 22, the defendant had not made a prima facie showing of his being a "regular minister of religion" as that term is defined in the Statute.

■ The minutes of the June 1st meeting kept by the Clerk of the Local Board and made a part of the registrant's file imply that perhaps the Board was applying and was urging on the registrant a standard for a ministerial exemption other than that articulated in the Statute. The Court's observation is based on the fact that undue emphasis was apparently being placed by the Board on the registrant's attaining Pioneer status, almost as if the Board believed that being a Pioneer Minister were a requisite for qualifying for a ministerial exemption. At this point, however, the evidence of an erroneous standard is too slim to draw any affirmative conclusion. Moreover, as the registrant had not yet made a prima facie case, the error, if any in fact existed, would only be of significance if there were a basis for concluding that the defendant was precluded from making a prima facie showing by the Board's insistence on the improper standard. United States v. Zieber, supra.

■ On August 11, 1966, the Local Board ordered the registrant to appear before it and the State Director of Selective Service, Col. Hall, on August 17, for the purpose of arriving at an agreement as to the civilian work which the registrant would perform in lieu of induction. At the meeting, the registrant renewed his request for a IV-D classification, offering in further support of his request a card from the Watchtower Society indicating that he had been designated a "vacation pioneer" from July 1, 1966 to December 31, 1966. Although the meeting was called for the above stated purpose, the Board, exercising its discretion under 32 C.F.R. § 1625.2(b) reopened the registrant's classification and decided by a recorded vote of 5–0 that the lowest classification to which the registrant was entitled was I–O. Once again, the Court is of the opinion that the defendant had not made a prima facie case for the IV-D classification. However, what had been hinted at in the notes of the June 1, 1966 meeting as to the significance of the Pioneer status was made express in the meeting notes of August 17 for when the registrant stated "that he is a vacation pioneer and will build up to a pioneer", Col. Hall responded, "Therefore, you are not a regular pioneer and not eligible for a IV-D classification." To set "Pioneer" status as the test for a ministerial exemption is to misapprehend the standard laid down in § 466(g) (2) and (3), 50 App.U.S.C.[4] The significance of the application of the improper standard will be discussed infra.

■ Subsequent to the meeting of August 17, the defendant's file was forwarded to the Delaware Appeals Board for a *de novo* consideration of the defend-

---

3. This confirmation was never received by the Board.

4. In United States v. Hestad, 248 F.Supp. 650 (W.D.Wis., 1965) a case remarkably similar to the instant case, Judge Doyle ruled:

"If such a standard [that only pioneer ministers or higher are entitled to the IV–D classification] was applied by the local board, and perhaps endorsed by the state headquarters, it was incorrect. The Selective Service Act defines 'duly ordained minister of religion' (50 App., U.S.C., sec. 466(g) (1), (2), (3)) for the purpose of exemption from training and service (50 App., U.S.C.,

sec., 456(g)). The regulations reflect these statutory definitions. 1622.43. The administrators and the courts properly insist that these statutory definitions govern. They properly reject the contention that a member of Jehovah's Witnesses is entitled to a 4–D classification simply because his sect considers each of its members a 'minister.' It would be equally improper to look solely to whether the sect considers one of its members a 'regular pioneer minister', and thus to avoid the necessity of testing the specific facts of each case by the statutory standard."

ant's request for a IV-D classification.[5] No new information accompanied the registrant's file. Without considering at this point whether the appeal was tainted because of the Local Board's adherence to an improper standard, which allegedly misled the registrant and which resulted in a record which fails to present the facts pertinent to the registrant's classification, this Court finds on the record presented to the Appeals Board that the registrant had failed to establish a prima facie case entitling him to a ministerial exemption. Accordingly, the Appeals Board's refusal to award the defendant a IV-D classification is unassailable. Because the vote of the Appeals Board was unanimous, no further appeals were possible. 32 C.F.R. § 1627.3.

In November, 1966, the defendant received a new special form for civilian work. Again he returned the form uncompleted. The Board, as required by 32 C.F.R. § 1660.20(b), advised the defendant of three types of civilian work which he could perform. In reply, on December 14, 1966, the defendant submitted a letter to the Local Board advising that he had been a "vacation pioneer minister" since July, 1966, and that he had been spending 100 hours per month in the ministry since July. Further, he advised that he would continue to work as a minister and would not perform any of the civilian work offered. From the correspondence in the defendant's file, it appears that the defendant's letter was treated administratively by the Clerk of the Local Board solely as a refusal to perform civilian work. The defendant was ordered to appear on February 15, 1967. Apparently, the Local Board itself did not consider what effect, if any, the new information would have on the defendant's classification.

On February 15, a meeting was held pursuant to 32 C.F.R. § 1660.20(c) by Local Board No. 2, to attempt to persuade the defendant to accept some form of approved civilian work. The meeting opened with a discussion between Board Chairman Rodney and registrant Simms, during the course of which the registrant advised the Board that in addition to his status as a "vacation pioneer", which had been extended beyond December 31, 1966, he was spending 100 hours per month performing his "ministry" work and that he had recently been appointed assistant congregational servant. The registrant also volunteered that his secular employment as a barber averaged 4 to 5 hours per day.

█ On its face, this new information taken together with that which had already been put before the Local Board, is sufficient to establish prima facie that the registrant was a "regular minister of religion", entitled to a IV-D classification. 50 App.U.S.C. § 466(g) (2).

In Fitts v. United States, 334 F.2d 416 (C.A. 5, 1964), the requirements of the statute defining a minister of religion are explained as:

"First, the registrant must have the ministry as a vocation rather than as an avocation.

\* \* \* \* \* \*

"Second, religious affairs must occupy a substantial part of the registrant's time and they must be carried on with regularity.

\* \* \* \* \* \*

"Finally, and most important, in order to obtain an exemption a registrant must stand in the relation of a minister to a congregation or in an equivalent relation as a recognized leader of a group of lesser members of his faith."

5. The registrant had advised the Local Board in May, 1966, that he wanted to appeal from the I–O classification given him on May 18, 1966. The notice of appeal was overlooked by the Local Board until called to its attention in September, 1966, by Deputy Director of Selective Service Daniel Omer of the National Headquarters of the Selective Service System. Upon receipt of Director Omer's letter, the Local Board processed the registrant's appeal. However, as the registrant had been classified anew on August 17, 1966, by the Local Board, the appeal in October must be regarded as an appeal from the August, 1966 classification. 32 C.F.R. § 1625.11.

Here the defendant showed that he had been spending 100 hours per month for approximately 7½ months in ministry work, that the 100 hours represents an amount of time approximately equal to the amount of time that he was spending in secular employment; and that he had recently been appointed to a position of leadership in his congregation. Further, the Court finds that the record is, as the defendant alleges, devoid of any information inconsistent with the registrant's claim for exemption.

The issue here is whether the Local Board denied the defendant due process when it did not take cognizance of these new facts and did not reopen the defendant's classification. The Selective Service regulations recognize that "no classification is permanent" (32 C.F.R. § 1625.1(a)) and that "[t]he local board may reopen and consider anew the classification of a registrant * * * (b) upon its own motion if such action is based upon facts not considered when the registrant was classified, which if true, would justify a change in the registrant's classification; * * *." (32 C.F.R. § 1625.2(b)).

In United States v. Ransom, 223 F.2d 15 (1955), the Seventh Circuit held:

" * * * We think that the rule requiring a basis in fact for the action of the board in making the original classification, as announced in Dickinson and Estep is equally applicable to the action of the board in determining whether or not changed conditions justify a reopening of the registrant's classification and consideration of his claim to a different classification. The

local board should not be able to escape the requirement of a basis in fact by simply refusing to reopen a registrant's file and consider it further. If a registrant makes a prima facie showing of right to a new classification, the board cannot refuse to give it to him unless it has at least a basis in fact for that refusal. We regard this as a necessary corollary to, if not the same as, the rule laid down in the Estep and Dickinson cases, supra."

Similarly, in United States v. Hestad, supra, Judge Doyle ruled that:

" * * * It was error for the local board to ignore this uncontroverted evidence on December 14, 1964. It was error to rely solely on the absence of a 'regular pioneer' appointment, if in fact the local board did so rely. This failure to reopen the classification on December 14, 1964, violated the due process guaranteed by the Fifth Amendment."

The instant case differs from the Ransom and Hestad cases in that in both of those cases the defendant requested in writing that the Board reopen and reconsider his classification in light of new information pursuant to 32 C.F.R. § 1625.4. Thus, in Ransom and Hestad, the attention of the Board had been focused on the question of whether or not to reopen the registrant's classification. In this case, it appears from the minutes of the February 15th meeting that the Local Board *sua sponte* embarked on making the threshold determination of whether or not to reopen the defendant's classification.[6] 32 C.F.R. § 1625.2(b).

---

6. Arguably, the Local Board did not intend to consider the possibility of reopening the registrant's classification when Chairman Rodney inquired about the Registrant's claim to a IV–D Classification. If that is the case, the action of the Board in not considering whether to reopen was an abuse of discretion. Recognizing that "no classification is permanent" (32 C.F.R. § 1625.1(a)), the regulations charge the Local Board with the duty of keeping "informed of the status of classified registrants" (32

C.F.R. § 1625.1(c)). Further, the regulations give the Local Board the discretion to reopen and reclassify a registrant whenever facts come to the attention of the Board which were not considered at the time of classification. 32 C.F.R. § 1625.2(b). The discretion to reclassify does not operate solely to remove exemptions or deferments but to keep all registrants properly classified. Therefore, when a registrant submits information to the Local Board entitling him prima facie to a classification lower than the one

"Mr. Rodney—You are asking for a IV-D classification?

"Simms—Yes, have studied ministry since 1958, attended Bible School February 1, 1964, and was publicly ordained to be a minister. [S]ince July 1, 1966 and have been engaged in pioneer work. Have been doing vacation work for the past 8 months and will be pioneer around March 1st of this year. 'I'm now assistant congregation servant.'

"Mr. Rodney—You were last interviewed Aug. 1966. Has your occupation changed?

"Simms—I'm in Jev. Witness and other occupation work as barber—work 4 or 5 hours a day at Taylors Shop in Dover, Del.

"Mr. Rodney—How old are you now?

"Simms—I am 20." [7]

Thus, the Local Board proceedings of February 15 are indistinguishable from those reviewed in Ransom and Hestad. Having come to the point of weighing the new information to determine whether or not to reopen the registrant's classification, there must be a basis in fact for the Board's refusal to reopen. United States v. Ransom, supra; United States v. Hestad, supra. No such basis in fact appears on this record. The registrant had made a prima facie showing and the record does not contain any evidence inconsistent with his showing. The refusal of the Local Board to reopen the registrant's classification denies the defendant his Fifth Amendment right to due process. Accordingly, it is the conclusion of this Court that the order to report for civilian work was outside the jurisdiction of the Local Board and, thus, the registrant's failure to report was not in violation of 50 App.U.S.C. § 462.

Because the Court has determined that there was no basis in fact for the Local Board's implicit refusal to reopen the registrant's classification on February 15, 1967, the significance of the Board's application of the improper standard on the record here, if any, need not be considered.[8]

The other points urged by the defendant in support of his motion will not be discussed as the motion is granted for the reasons stated.

Submit Order.

which he had been given, it is the duty of the Board to reopen and consider anew his classification. 32 C.F.R. § 1623.2, 32 C.F.R. § 1625.11. Here, the registrant presented sufficient material to prima facie entitle him to a classification lower than the I–O which he had. The failure of the Local Board to consider reopening must be supported by a basis in fact. As discussed in the text of this opinion, no basis in fact existed for a refusal to reopen, a fortiori there could be no basis in fact for a refusal to consider the question of whether or not to reopen.

7. Excerpt from the minutes of the February 15, 1967 meeting of Local Board No. 2.

8. Nevertheless, the Court notes that serious questions may be presented where, as here, the Local Board has improperly set "Pioneer status" as the test for a ministerial exemption. 50 App. U.S.C. § 466(g) (2). United States v. Hestad, supra.