UNITED STATES of America
v.
Luigi RUBINO.
Cr. No. 23025.

United States District Court
E. D. Pennsylvania.

Jan. 17, 1969.

Drew J. T. O'Keefe, U. S. Atty., Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Herbert W. Salus, Jr., Philadelphia, Pa., for defendant.

OPINION AND JUDGMENT

CLARY, Chief Judge.

The defendant, Luigi Rubino, was classified as a conscientious objector (1–O) by Local Board No. 113 in November, 1963. He requested and was granted a personal appearance before the Local Board to discuss this classification, and as a result of information supplied by him at that time, Rubino was classified as a minister and given a 4–D exemption.

In July, 1965, Local Board No. 113 gave the defendant's file a periodic review, and on the basis of the information he submitted at this time, the Board changed the defendant's classification from 4–D to 1–O as of September 21, 1965. At his request, Rubino was again granted a personal interview before the Local Board, as a result of which he was retained in the 1–O classification. The defendant then requested and received a review of his Selective Service file by the District Appeal Board which classified him as 1–O by a 3–0 unanimous vote on November 30, 1965.

In April, 1966, defendant passed his Armed Forces physical examination, and the Board began procedures for placing him in civilian work in lieu of military service as provided by Selective Service Regulations. Defendant refused to choose such employment from a list submitted by his Local Board, and on December, 8, 1966, he was ordered by Local Board No. 113 to report for work at the Norristown State Hospital on December 19, 1966. Defendant failed to report to this institution as ordered, and this prosecution for failure to perform a duty imposed by the Selective Service Act followed.

Defendant contends that he should be acquitted of the charge on the grounds that the action of the Local Board was incorrect and void since it acted arbitrarily, capriciously and without any basis in fact when it changed his clas-

sification from 4–D to 1–O in September, 1965.

The scope of review by this Court in supervising the action taken by a Draft Board is the narrowest known to the law. The sole function of the Court in these cases is to determine whether there is any basis in fact for the decision of the Board, Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), and whether the registrant was given sufficient opportunity to present his arguments at a hearing to meet the requirements of substantive and procedural process. United States v. Majher, 250 F.Supp. 106 (S.D.W.Va.1966), United States v. Hestad, 248 F.Supp. 650 (W.D. Wis.1965), United States v. Kovalchick, 255 F.Supp. 826 (E.D.Pa.1966). As the Court stated in *Witmer,* supra, 348 U.S. at 380, 75 S.Ct. at 395:

> "It is well to be remembered that it is not for the Courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. * * * The classification can be overturned only if it has 'no basis in fact.' "

Initially, the Court takes note of the fact that no classification by a Draft Board is permanent, 32 C.F.R. 1625.1(a); that the Local Board may take steps to keep currently informed concerning the status of classified registrants, 32 C.F.R. 1625.1(c); and that the Local Board may reopen and consider anew the classification of a registrant on its own motion, if such action is based on facts not considered when the registrant was originally classified which would justify a change in his classification, 32 C.F.R. 1625.2(b).

On the occasion of his personal interview before Local Board No. 113 on December 18, 1963, defendant completed a typewritten questionnaire which indicated that he was the sole minister for a congregation of two hundred and fifty people. In reliance on this information, the Board classified Rubino 4–D, granting him a ministerial exemption.

On July 12, 1965, pursuant to 32 C.F.R. 1625.1(c) of the Selective Service Regulations, Local Board No. 113 sent Rubino two forms to be completed in order to bring his file up to date. The answers submitted by defendant at this time evidenced significant changes from those submitted on December 18, 1963. He now indicated that there were only sixty-one members in his local congregation, and in addition, that each of these sixty-one members was also a minister.

These discrepancies between defendant's statements of December, 1963 and July, 1965 were explained by the testimony of Rubino and others at trial, that in his congregation of Jehovah's Witnesses, the Nazareth Congregation, there were sixty-one practicing members, and that each member was a minister in his own right, expected to evangelize and spread the tenets of their religion; that in Rubino's case, he was in charge of a small group of the Nazareth Congregation who were assigned to preach in a territory composed of two hundred and fifty people who were not members of defendant's faith.

On the basis of this new information, Local Board No. 113 changed defendant's classification from 4–D to 1–O on September 21, 1965. At his request, he was granted a personal appearance before the Board at which he indicated that the leaders of the Nazareth Congregation were Walter Geuss, Congregation Servant, Don Rhoads, Assistant Congregation Servant, and Philip Rubino, defendant's brother, Bible Study Servant. Following this personal appearance, the Board decided the 1–O classification should not be reopened.

In view of these facts, the Court is unable to say that Local Board No. 113 acted without any basis in fact when it changed his classification from 4–D to 1–O on September 21, 1965. The information on which it acted was in fact

substantial, clarifying as it did defendant's original statements and his status as the sole "minister" to two hundred and fifty people. The record is also clear that Rubino's due process rights were fully respected, as evidenced by his personal appearances before the Board and the many letters made a part of his Selective Service file.

Defendant's contention that the change in classification was arbitrary and capricious is without merit. Local Board No. 113 acted not only in the face of significant change in the facts concerning registrant's status, but also in line with the Congressional intent in the creation of the ministerial exemption. In referring to this exemption and the limitations it attached thereto, (e. g. 50 U.S.C.A. App. § 466(g) (3), the Congress indicated that such provisions were inserted "to insure the fact that there 'be no misunderstanding of the fact that the exemption granted is a narrow one, intended for the *leaders* of the various religious faiths, and not for the members generally. * * *' Sen.Rep.No. 1268, 80th Congress, Second Sess., May 12, 1948, p. 13 (emphasis supplied). The same references indicate that Congress was attempting to forestall 'claims of members of one particular faith that all of its members were ministers of religion.' Ibid." United States v. Stewart, 322 F.2d 592, 594 (1963).

By his own admission, defendant was not a "leader" of the Nazareth Congregation, and as late as 1965, the general counsel for the Watchtower Bible & Tract Society indicated in a written memorandum to the National Selective Service Appeal Board that the Society would not claim the ministerial exemption for anyone below the rank of Pioneer. United States v. Sturgis, 342 F.2d 328 (1965). Neither the defendant nor the governing body of Jehovah's Witnesses considered that he was within the class intended to be protected by the ministerial exemption, i. e., the leaders of the religion.

For these reasons, we find that Local Board No. 113 did not act without any basis in fact in changing defendant's classification from 4–D to 1–O, nor did it act arbitrarily and capriciously. Therefore, we find the defendant, Luigi Rubino, guilty as charged for failing to perform a duty imposed by the Selective Service Act, as amended, 50 App.U.S.C. § 456(j), § 462.

### JUDGMENT

And now, to wit, this 17th day of January, 1969, after full consideration of the whole record, it is adjudged that Luigi Rubino, defendant, is guilty of the charge set forth in the indictment.