**UNITED STATES of America**

v.

**Vaughn Preston PEEBLES.**

**No. 11223.**

United States Court of Appeals, Seventh Circuit.

March 4, 1955.

Floyd W. Burns, Gustav H. Dongus, Indianapolis, Ind., for appellant, Cadick & Burns, Fansler, Fauvre, Dongus & Chambers, Indianapolis, Ind., of counsel.

Jack C. Brown, U. S. Atty., Indianapolis, Ind., Stephen Leonard, Asst. U. S. Atty., Anderson, Ind., Robert J. Wilson, Don A. Tabbert, Asst. U. S. Attys., Indianapolis, Ind., for appellee.

Before DUFFY, Chief Judge, and LINDLEY and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

Defendant was convicted for refusal to submit to induction into the armed forces of the United States in violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq. The District Court sentenced him to three years' imprisonment. Defendant claims his induction order was void by reason of the invalidity of his selective service classification which denied his claims of exemption from service as a conscientious objector.

Defendant was born on a farm in Wabash County, Indiana. His family for at least four generations have been members of the religious sect of the Society of Friends, more commonly known as

Quakers. On November 9, 1951 defendant executed his selective service questionnaire and returned it to the Local Board. In executing the questionnaire defendant stated that he and his father were partners in operating a 540 acre farm and that he had been engaged in farm work since he was large enough to help. He stated that due to near sightedness and breathing difficulties caused by an x-ray scar on one lung he did not believe that he was physically qualified for military service. However, in the questionnaire he did not claim conscientious objector status under Series XIV statement on the form.

On November 15, 1951 the Local Board classified defendant I–A. He then filed a request for re-classification to Class II–C (agricultural deferment) and also filed a notice of appeal. The Selective Service Appeal Board retained defendant in Class I–A by a vote of three to one. Defendant then appealed to the National Selective Service Appeal Board which, on May 13, 1952, classified him as I–A. Defendant was ordered to report for physical examination on January 12, 1953. He did so and was found acceptable for military service.

On January 23, 1953 defendant and his father called on the Local Board and requested SSS Form 150 in order to claim defendant's exemption from military service as a conscientious objector. The clerk of the Local Board refused to give defendant the form requested. On January 26, 1953 defendant submitted to the Local Board a written request to be reclassified as a conscientious objector with an I–O classification. In an accompanying letter defendant stated that when he registered he did not feel he desired to be registered as a conscientious objector, but that he had changed his position because of attendance at revival meetings at the Friends Church in Wabash of which he had been a member all his life, and after conferring with Keith Sarver, pastor of that church. He also stated that he had been studying the "Book of Discipline—Faith and Practice of Indiana Yearly Meeting of Religious

Society of Friends". The letter contains several quotations from the "Book of Discipline".

On January 28, 1953, after the receipt of such letter and written request, the Local Board gave defendant SSS Form 150. Defendant completed the form and returned it to the Board on February 2, 1953. In this form defendant stated he was by reason " * * * of my religious training and belief conscientiously opposed to participation in war in any form * * *." He stated his belief was based upon the "Book of Discipline" and sermons preached by his pastor in revival meetings at one of which he had gone "forward", and that he had rededicated his life to Jesus. He further stated he had received his training and acquired his religious belief forming the basis of his claim as a conscientious objector by regular attendance at Sunday School and Church, training at home, and by conferences with Reverend Sarver, pastor of the Wabash Friends Church. He pointed out that he did not drink alcoholic beverages, smoke, gamble or use profane language; also that he was president of Rural Youth in Wabash County.

Nine days after the Local Board received SSS Form 150 it sent defendant a letter stating "The additional evidence submitted did not warrant the reopening of your case." Thereafter, letters were received by the Board from Thomas E. Jones, President of Earlham College, a Quaker institution, Marcus E. Kendall, presiding clerk of Western Yearly Meeting of Friends, Murray C. Johnson, presiding clerk of Indiana Yearly Meeting of Friends, and others. All were emphatic in their statements that they were convinced that defendant was sincerely a conscientious objector. Pastor Sarver also communicated with the Board and explained in detail his discussions with the defendant. He wrote to the Board: "You know the position of the Friends Church relative to war. I had been giving strong emphasis to that position both in the sermons and in the Youth Fellowship. When Vaughn came to see me I

explained to him as best I could, the spiritual basis for the historic position of Friends in opposition to all war. I pointed out to him that the decision must be his decision and that he should not take the C. O. position unless he was firmly convinced in his own mind and heart that he believed that to be his own conviction. He had already been giving serious thought to this matter and needed some guidance in clarifying it in his own mind. When he left my study on that first occasion I did not know what his decision was.

"A few days later he came to see me again, having made his decision, and wanted guidance relative to procedure. I have given that to the best of my ability."

On March 24, 1953 the Local Board made an entry in defendant's record reciting defendant's earlier request for an agricultural deferment, and noting that he had not claimed a conscientious objector status until he had passed his physical examination and noted its conclusion that he was not entitled to any classification other than I–A.

On April 16, 1953 General Hershey, National Director of the Selective Service System, wrote to the State Director in Indianapolis, pointing out that the Local Board had failed to reopen defendant's classification after receiving SSS Form 150, and requested that this be done. The State Director then notified the Local Board it would be necessary to consider anew defendant's classification and cancel the order for him to report for induction. The Board did order a cancellation of the order and on April 28, 1953 the chairman of the Board made a notation in defendant's file to the effect the Board did not believe defendant was conscientiously opposed to military training and stated "The Board reluctantly opens this case at the instance of the Director of Selective Service for appeal." On the same day the chairman and two members of the Board each placed in defendant's file written statements protesting the opening of the case, the chairman stating he did so "with

the greatest feeling of shame and reluctance," and charging that the case " * * * has been taken over by the politicians." The secretary of the Board charged that pressure from Washington had been exercised and that " * * * the integrity of the members of our Draft Board has been violated and our jobs should be considered as terminated." The third member of the Board voted against reopening. On the same day the Board mailed to defendant a I–A classification card.

On May 1, 1953, defendant requested the opportunity to appear before the Board with a witness. On May 5 the Board informed defendant he could appear on May 7, but that no other person had the right to appear. Defendant wrote the Board citing Regulation 1624.1 that the Board could, in its discretion, permit witnesses to appear with a registrant. On May 7 defendant did appear before the Board and he was again classified I–A. Pursuant to his previous request his file was sent to the State Appeal Board. The file was accompanied by the following letter signed by all members of the Board: "We respectfully request the Appeal Board to give this case quick action because of its morale status in the community, which we feel is undermining the integrity of Selective Service and the Local Board members." On May 19, 1953 the Appeal Board, by unanimous vote, decided defendant was not entitled to a I–O classification and then referred the file to the United States Attorney for the purpose of securing an advisory recommendation from the Department of Justice. The F.B.I. made an investigation and its report was made to the hearing officer who interviewed the defendant and three witnesses appearing in his behalf. The hearing officer indicated that the witnesses and many church associates of defendant believed defendant to be sincere in his claim for exemption as a conscientious objector, but concluded because of defendant's previous efforts to avoid military service he "entertained grave doubts that registrant's present claim

for exemption was made in good faith." The Department of Justice reported that informants interviewed believed defendant was sincere in his conscientious objector beliefs, that his character and reputation in the community were good, but concluded that " * * * the registrant's objections to combatant and noncombatant service are not sustained."

On September 8, 1953 the Appeal Board classified defendant I-A and a classification card to that effect was mailed to him. Defendant sought a Presidential appeal. About this time, eight letters were forwarded to the National Director by church officials and friends supporting defendant's claims as a conscientious objector. An anonymous letter, much relied on by the government in this appeal, was sent to the Local Board purporting to come from a Quaker mother wanting to know what was keeping "young Peebles out".

On November 20, 1953 defendant was mailed his order to report for induction on December 9, 1953. Defendant reported as ordered but refused to be inducted.

▆▆▆ Defendant, under due process, had a right to have the Board consider his evidence fairly and without prejudice. "A draft board loses jurisdiction when it proceeds arbitrarily and without due regard to the rights to which a registrant is entitled under the regulations." Niznik v. United States, 6 Cir., 173 F.2d 328, 336. The record before us clearly demonstrates that the Local Board did not give defendant a fair hearing on his claim for exemption as a conscientious objector. Apparently the Board was of the view that because defendant did not make his claim when he executed his questionnaire nor at the time he attempted to obtain a II–C classification, that he could not later obtain a classification as a conscientious objector. The persistence of defendant in pressing his claim engendered antagonistic feelings against him by the Board

members. It was soon apparent that the entire Board was bristling with hostility toward defendant. This was shown at the time the Board was required to reopen the case to consider defendant's claim for exemption as a conscientious objector. The Board did finally reopen the case "reluctantly". The chairman of the Board voted to reopen "with the greatest feeling of shame and reluctance"; the secretary was of like mind while the third member voted against reopening in spite of the request made by General Hershey and the Regulations notwithstanding. As might be expected the Board made short shrift of defendant's claim for exemption by voting on the same day that he be given a I-A classification once again.

▆▆▆ Defendant had the right to claim successive deferments on different grounds. United States ex rel. Hull v. Stalter, 7 Cir., 151 F.2d 633; Taffs v. United States, 8 Cir., 208 F.2d 329. There was nothing inconsistent in defendant's first claiming agricultural deferment, and later, a conscientious objector deferment although the evidence here discloses that this eighteen year old boy did not fully reach his convictions as a conscientious objector until after the date he claimed a II–C status. We held in United States v. Simmons, 7 Cir., 213 F.2d 901, 905–906 that the length of time elapsing since a registrant espoused a faith was not, in itself, a decisive basis for denying a conscientious objector status.

The Local Board was not satisfied with summarily disposing of defendant's claim for exemption, but endeavored to and probably did prejudice and influence the action of the Appeal Board. The hostile statements of the Chairman and Secretary were in the file. In addition all the members of the Board had signed the letter heretofore quoted requesting the Appeal Board to give "quick action". The Appeal Board heeded the request. It is clear from the Act,[1] and the Regula-

---

1. Section 6(j) of the *Universal Military Training and Service Act*, 50 U.S.C.A.

Appendix, § 456(j), provides in part: " * * * Any person claiming exemption

tions that where the claim of a registrant for exemption as a conscientious objector has been denied by the local board, the Appeal Board should not make a determination or classification until after it has received the advisory recommendation from the Department of Justice. But here the Appeal Board did not wait for any recommendation. On May 19, 1953 it took action by denying defendant an I–O classification and on the following day referred the matter to the Department of Justice  It is hardly a sufficient explanation that such procedure had been authorized by Regulations which had been obsolete for nearly a year, the amendatory Regulation being dated June 18, 1952.

There was no affirmative evidence before the Local Board to contradict the evidence furnished by defendant and numerous of his church associates unless the anonymous letter hereinafter discussed could be considered in that category. In United States v. Close, 7 Cir., 215 F.2d 439, 441, a conscientious objector case, we stated: "In Dickinson v. United States, 346 U.S. 389, 397, 74 S.Ct. 152 [98 L.Ed. 132], the Supreme Court held that the local board was not free to disbelieve registrant's testimonial and documentary evidence as to his sincerity in the absence of any impeaching or contradictory evidence." We quoted from Dickinson as follows: " 'But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice.' "

In the Close case we held that the F.B.I. report which described interviews with various persons whose views varied as to the sincerity of the registrant's claim for exemption as a conscientious objector, was not an evidentiary basis for the denial of the claimed exemption. We also quoted from Annett v. United States, 10 Cir., 205 F.2d 689, 691: " 'To merely state that he does not consider him sincere without giving a single fact upon which such belief is predicated does not rise to the dignity of evidence.' "

■ In its brief the government sets forth in full an anonymous letter. Among other things it charged that defendant's father was responsible for the claim that defendant was a conscientious objector, and it asked "Just what is your Board going to do about this case and how many more boys of our country will have to go, before he goes?" Surely, a gossipy, anonymous letter cannot provide the necessary basis in fact. But, in any event, the letter was not received by the Board until after the Appeal Board had finally classified defendant as I–A on September 8, 1953. Of course, the evidence as to registrant's status in the criminal trial is limited "to that upon which the board acted." Cox v. United States, 332 U.S. 442, 454, 68 S.Ct. 115, 121, 92 L.Ed. 59.

The government argues that any bias or prejudice on the part of the Local Board, which it does not admit, was cured because of defendant's appeal to the Appeal Board and Cramer v. France, 9 Cir., 148 F.2d 801 is cited. The Cramer case might be considered authority for the government's proposition although a later decision by the same Court in Knox v. United States, 9 Cir., 200 F.2d 398 would seem to take all vitality from the Cramer decision.

■ We think that in a case where the arbitrary and prejudiced action of the Local Board reached up to the Appeal Board that we should apply the rule

from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. * * * The appeal board shall, in making its decision, give consideration to, but shall not be bound to follow, the recommendation of the Department of Justice together with the record on appeal from the local board. * * * "

stated in Mintz v. Howlett, 2 Cir., 207 F.2. 758, 762. The Court there stated: " * * * We have ruled in common with other courts that a registrant is entitled to a full and fair disposition of his contentions at every level of operation of the Selective Service System and that a review by an appeal board may not serve to supply a deficiency in a fair hearing by the local board. United States v. Fry, 2 Cir., 203 F.2d 638, 640; United States v. Stiles, 3 Cir., 169 F.2d 455, 459; Davis v. United States, 6 Cir., 199 F.2d 689, 691; Knox v. United States, 9 Cir., 200 F.2d 398, 401–402."

We hold that the biased and prejudiced attitude of the members of the Local Board deprived the defendant of a fair hearing on his claim for exemption as a conscientious objector, that the action of the Board was arbitrary and capricious and that the defendant was also denied procedural due process. It follows that the order for defendant to submit to induction was a nullity, and that the judgment of conviction must be reversed with instructions to dismiss the indictment.

Reversed.