**UNITED STATES of America,
Appellee,**

v.

**William Francis CURRY, Jr., Defendant,
Appellant.**

**No. 7257.**

United States Court of Appeals
First Circuit.

June 5, 1969.

William J. Carr, Boston, by appointment of the Court, for appellant.

Stanislaw R. J. Suchecki, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

William Francis Curry, Jr. appeals from a conviction for refusing to submit to induction in violation of Section 12(a) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 462(a). Appellant argues both that there is no "basis in fact" in his Selective Service record for denying his request for classification as a conscientious objector and that his "right of appeal from an administrative decision guaranteed by the regulations was in effect denied" because of his local board's failure to state "facts upon which an effective rebuttal could be made".

On the first issue there is no contention by the government that appellant's beliefs do not meet the "religious" requirements of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) or those of 50 U.S.C.App. § amended 50 U.S.C.A. App. §§ 456(j),

lant's sincerity. The point in contest is whether there is a basis in fact (50 U.S.C.App. § 460(b) (3) (1964), *as amended*, 81 Stat. 105 (1967)) for a judgment that appellant's beliefs do not meet the statutory requirement of opposition to "war in any form". 50 U.S.C. App. § 456(j); 32 C.F.R. § 1622.14 (1967).[1]

The record before us on this point consists of appellant's responses to the questions in the "Special Form for Conscientious Objectors" (SSS Form No. 150); the meager minutes of a personal interview of appellant with his local board; and appellant's own testimony at trial concerning his statements at his personal appearance.

Appellant's extended explanation of his religious beliefs on the "Special Form" began with a sensitive and succinct statement of his religion. The explanation continued with a statement that war is "the product of political, social, and economic systems executed by military systems", and that he as an individual, understanding the value of love and peace, "must try to live this without becoming trap[p]ed by systems into war."

Appellant supplemented these views by additional remarks in answer to the question: "Under what circumstances, if any, do you believe in the use of force?" His answer in full was as follows:

"The use of force is a situational choice because the complexity and individuality of situations demand an individual interpretation and choice of action. But situations can be grouped into general typ[e]s where general choices of action can be determined; therefore, the situation of war can demand a general interpretation as to one's action."

The eighteen line summary of appellant's interview with his local board contains only the following question and answer relevant to the point at issue:

"Would you be a C.O. if this country is under attack?

"I Can't Say, it depends on circumstances."

At trial, appellant did not contend that the record, though skeletal, was an unfair summary of his response to this question. Indeed, his statements both on direct and cross-examination are entirely consistent with this answer.[2]

1. The existence of a "judgment" is derived from our view, apparently shared by the government, that the classification decision of the local board, unaccompanied by reasons, presents only this issue. We discuss, *infra*, appellant's procedural argument that failure to articulate reasons prejudiced his right of appeal.

2. He elaborated on his answer by saying: "On a question of that type, if somebody wants to bring up * * * different possibilities, if this and if that, it is very hard to say what you could do under the situation. If you want to put the whole situation out, you can really say what you want to do * * *. The situation I am in now, I can react to. I am faced with a situation where the military system wants to draft me, send me to the situation in Vietnam, confined in a military system. As I understand this situation, I feel this situation is wrong * * *."
Later, asked to explain what he meant by his response on the "Special Form" that "the use of force is a situational choice", appellant answered:

"A. In saying this, what I was implying was the fact that you could bring out so many 'ifs', so many particular cases where changes in a lot of different tags, would be, you know, whether used or not used by the particular individual, but you could not make a statement as to whether—
"Q. Your belief in the use of force is a relative feeling.
"A. Yes, it is very relative, it would depend on the situation at hand.
 *       *       *       *       *
"Q. On October 26, 1967 you were asked with respect to whether you would defend the United States if it were attacked. Is it true, your answer to that question was, that in certain circumstances you might—
"A. What I was saying is, they proposed an 'if', they were saying, if everything was different, what would I do. The thing is, how can I answer a question like that?
"Q. You did not tell them under no circumstances would you ever bear arms for the United States, did you?

■ All of these comments—in the "Special Form", the sparse summary in the minutes of the personal interview with the local board, the extended discussion at the trial—point to a candid and consistent approach to one of the age-old questions vexing man: "When should one kill?". The answer to this as to many other questions formerly thought to be settled by conventional wisdom is, for many, no longer simplistic or easy. *See, e. g.,* Fletcher, *Situation Ethics* (1966). The hard fact, however, is that the Congress has decided that the litmus test which must be passed by those who would secure the legal status of "conscientious objector", and correspondingly invoke the limited exercise of national self restraint toward those who disagree with national policy, is that of religiously motivated opposition to all "war in any form". Courts have not shown a disposition to depart more than minimally from this formula. Compare Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955) with United States v. Spiro, 384 F.2d 159 (3d Cir. 1967), cert. denied, 390 U.S. 956, 88 S.Ct. 1028, 19 L.Ed.2d 1151 (1968). We concede that this test may serve to stimulate young men to avouch an absolutism they do not feel. The statute and our holding may be construed to be an invitation to hypocrisy.

But there is another side to the question. We may safely assume that many young men of draftable age do not like to kill, do not especially relish military discipline, dislike interrupting their studies or careers, have little or no sympathy for a controversial conflict, and would rather, by far, be doing something they consider creative and constructive. Were appellant to be granted relief from the military burden on the basis of his stated views as to the occasions when wars should be fought, the statutory standard would have been effectively eviscerated.

■ Appellant argues that his answer to the question whether he would fight if the United States were attacked was ambiguous and that "the only possible construction" is that he would fight "if his life or the lives of those close to him were seriously threatened." It is true that appellant expressed not only ambiguity but candid uncertainty as to what he would do in speculative situations. But he was not ambiguous in refraining from the kind of sweeping opposition to all wars which § 456(j) requires. The local board therefore had a "basis in fact" for its action in denying appellant the status of conscientious objector.

■ Appellant further argues that the failure of his local board to provide reasons for its decision deprived him of the right of an effective appeal. No regulation affirmatively requires that boards give reasons for their decisions. *See, e. g.,* 32 C.F.R. §§ 1604.58, 1624.2 (d), 1626.13; *see also* Note, Changes in the Draft: The Military Selective Service Act of 1967, 4 Colum.J.Law & Soc.Prob. 120, 131–134 (1968).[3] Although the regulations do require that local boards keep minutes of each meeting, 32 C.F.R. § 1604.58, this requirement is apparently satisfied by making "a formal record of action taken". Ayers v. United States, 240 F.2d 802, 808 (9th Cir. 1956), cert. denied, 352 U.S. 1016, 77 S.Ct. 563, 1 L.Ed.2d 548 (1957). The burden is on the registrant to provide a transcript, 32 C.F.R. § 1624.2(b).[4]

"A. I could not say that because it would be a situational thing."
Other comments in his testimony were to the same effect.

3. Despite the recommendation of the Marshall Commission (The National Advisory Commission on Selective Service) that boards provide reasons, Congress took no action in this area in enacting the 1967 legislation.

4. There is no provision requiring notice of this burden and the "transcript" so provided would be the registrant's own reconstruction of the personal appearance. *See,* Reisner, The Conscientious Objector Exemption: Administrative Procedures and Judicial Review, 35 U.Chi. L.Rev. 686, 715 (1968).

At least in the absence of a showing of serious prejudice, we deem ourselves confined to a most restricted power of review. *See* Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955); United States v. Purvis, 403 F.2d 555 (2d Cir. 1968). Appellant offers no evidence of prejudice. There is no indication that he sought out reasons for the board's denial of his claim; indeed he testified that he never looked at his file until immediately before trial. His brief statement of appeal lends credence to the view that he believed he had already established an adequate record for the exemption and that no further efforts on his behalf were required. In this case we cannot conceive of appellant submitting to the Appeal Board any further clarification of his views on his opposition to war which would have been helpful to him, without at the same time negating his previous explanations given to the local board and at trial. Cf. United States v. St. Clair, 293 F.Supp. 337 (E.D.N.Y.1968).

Affirmed.