**UNITED STATES of America**

v.

**Charles William PRESCOTT, Jr.**

**Crim. A. No. 6917.**

United States District Court
D. New Hampshire.
July 25, 1969.

Louis M. Janelle, U. S. Atty., Concord, N. H., for plaintiff.

William H. Kelley, Wadleigh, Langdell, Starr, Peters & Dunn, Manchester, N. H., for defendant.

## OPINION

BOWNES, District Judge.

Defendant Charles William Prescott, Jr., was indicted for failure to comply with the order of his local draft board to report for and submit to induction into the Armed Forces of the United States in violation of Title 50, United States Code App., Section 462.

The defendant argues that his Selective Service file shows that there was no "basis in fact" for denying his request for classification as a conscientious objector. He also raises several defenses of administrative due process failure, directed primarily at the classification requirements as applied to him by his local board. The facts are not in dispute and consist primarily of the documentary evidence in the defendant's Selective Service file and the defendant's own testimony at the trial.

The defendant registered with Local Board No. 1 in Laconia, New Hampshire, on August 23, 1963, two days after his eighteenth birthday. He was first classified I–A by his local board in 1964, while he was pursuing civilian employment. While attending Concord Commercial College between 1963 and 1965, he was granted two student deferments. From June of 1965 until February of 1968, the defendant was a member of the Peace Corps and was stationed in Gabon, West Africa. During this period, his classification was II–A, civilian occupational deferment, the usual classification given to Peace Corps volunteers. His tour of duty was terminated along with that of all members of the Gabon Peace Corps at the request of the President of Gabon in February of 1968. Immediately upon his return from Africa, the defendant told his local board of the situation and was promptly classified I–A on March 13, 1968. The following day (March 14th) Prescott requested the Selective Service System "Special Form For Conscientious Objector" (SSS 150, Gov't Exh. No. 1, Doc. 27). That form was mailed to the defendant on the 15th and received back by the local board on the 22nd. On April 24th, after the required pre-induction physical, the defendant was found "acceptable."

The defendant's official contest of his I–A classification crystalized with a personal appearance before his local board on May 8th.

It has been stipulated by the government that the local board was operating under a misapprehension as to what law was to be applied to one claiming status as a conscientious objector. The defendant testified at the trial that the board chairman informed him that a registrant must be a member of a specific religious sect, such as the Quakers or Jehovah's Witnesses, in order to be classified as a conscientious objector. This testimony was uncontroverted. The Court also points out that the State

Selective Service Director was informed by the defendant of the board chairman's expressed reliance upon this standard at the registrant's oral hearing. Gov't Exh. No. 1, Doc. 64.

The registrant's appeal to the State Selective Service Appeal Board resulted in a unanimous classification of I–A on June 19th. On July 29th, the board received a letter from the defendant stating that he was being considered for a position with International Voluntary Services, Inc. [hereinafter IVS], an organization whose members, like Peace Corps members, are sometimes granted II–A occupational deferments. On the same day (July 29th), the clerk of the local board informed the defendant by mail that receipt by the board of "official papers from you or your employer" would result in a review and reconsideration of his case at the next regular board meeting.

On August 12th, an order to report for induction on September 9th was sent to the registrant. On August 19th, the board received a letter from the registrant explaining the delay in his IVS processing. After a personal interview with the board clerk, the registrant's induction was postponed until September 17th for reasons unrelated to his IVS application. The defendant failed to report for induction on September 17th.

Testimony of the local board clerk indicated that the age of a registrant is important in the board's consideration of granting a registrant a deferment. The uncontroverted testimony of the defendant at the trial indicates that the board also gave great weight to the fact that he had not requested the conscientious objector form (SSS 150) at the time of his original registration.

Finally, the Court notes that the appeal board gave no reasons for or resume of its action on the registrant's appeal.

## RULINGS OF LAW

As a threshold matter, the Court rejects the government's contention that the defendant is foreclosed from questioning his I–A classification because he did not appear at the Armed Forces Entrance and Examining Station (AFEES) on September 17, 1968, as ordered. Relying upon Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944), and McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed. 2d 194 (U.S. May 26, 1969), the government urges that Prescott's failure to appear at the induction center and to then and there refuse to take the symbolic "step forward" deprived the Selective Service System of one last opportunity in its administrative process to reject him.

This reliance upon the doctrine of exhaustion of administrative remedies is unsupported by the McKart case and, in fact, negated by it, and is inconsistent with the legislative history of Section 10(b) (3) of the Act, 50 U.S.C.App. § 460(b) (3) (Supp. III 1968). See McKart v. United States, nn. 12 & 14. See also Murray v. Vaughn, D.C.R.I., 300 F.Supp. 688, June 6, 1969, and cases cited therein. The defendant in this case is being prosecuted for failure and neglect "to comply with the order of his Local Board No. 1 to report for and submit to induction into the armed forces of the United States." As I read the McKart case, it is positive authority for allowing the defendant to raise the defense that there was no "basis in fact" for his classification without going through the meaningless formality of appearing at the induction center. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194. Our reliance upon McKart is buttressed by the recent First Circuit case of United States v. Powers, 413 F.2d 834, July 14, 1969. See in particular note 1.

As to the issue of the defendant's claim that his classification was erroneous, the Court is initially confronted with the difficult problem of scope of District Court review of a registrant's classification which has been determined by his local board and "redetermined" on appeal to the State Appeal Board.

The Congressional mandate as to judicial review is set forth at 50 U.S.C.App. § 460(b) (3), which provides in pertinent part:

> * * * No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [Section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided*, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President *only when there is no basis in fact for the classification assigned to such registrant.* * * *
> [Emphasis added.]

In this case, the misapplication of law by the local board in classifying defendant Prescott I–A and refusal to grant his requested conscientious objector classification, regardless of the standards applied, is considered irrelevant by the government. The government urges that the appeal board is required by the regulations [32 C.F.R. § 1626.26(a)] to consider an appellant's classification *de novo*, in the same manner as the local board; and that the appeal board's classification "cures" any prejudice or irregularity in the action of the local board. In support of its contention, the government relies heavily on Storey v. United States, 370 F.2d 255 (9th Cir. 1966). It is true that there is some language in the body of the opinion lending authority to the view that "the final classification had the effect of rendering harmless any errors committed in the earlier classification." 370 F.2d 255 at 260. It is to be pointed out, however, that the Court in *Storey* was quoting from as earlier decision, Evans v. United States, 252 F.2d 509 (9th Cir. 1958). Moreover, a careful reading of the *Storey* opinion indicates that the Court

carefully reviewed the Selective Service file and found therein a solid basis in fact for denying the registrant's claim as a conscientious objector.

No authority is cited, nor has this Court, after diligent search, been able to locate any controlling First Circuit authority on the precise question of "cure" by the appeal board of errors by the local board. The recent First Circuit decision of United States v. Curry, 410 F. 2d 1297, June 5, 1969, on which both the government and the defendant expressly rely, states: "At least in the absence of a showing of serious prejudice, we deem ourselves confined to a most restricted power of review." [Citations omitted.]

No matter what words and phrases are used to attempt to define the scope of review in a Selective Service case, it is clear that the Court must search the Selective Service file diligently for any basis in fact that will sustain the classification. In the *Curry* case, the Court considered the registrant's responses to questions in the "Special Form For Conscientious Objector" (SSS Form 150); the minutes of a personal interview that the registrant had with his local board; and the registrant's own testimony at trial concerning his statements at his personal appearance before the local board. This is essentially what this Court now considers as to the classification of Charles William Prescott, Jr.

The precise question decided in the *Curry* case was whether there was a basis in fact for a judgment that the appellant's beliefs did not meet the statutory requirement of opposition to "war in any form." There is no indication in *Curry* that a final determination of classification by the State Appeal Board automatically "cures" all defects of record and precludes a review of the Selective Service file by the District Court. And the review provisions of the statute do not lend support to the government's position that the appeal board's decision is a *de novo* classification automatically rendering irrelevant the proceedings be-

**1120**

fore the local board, and the law applied by it.

■ The appeal board's classification should stand if there is a "basis in fact" for it. But the mere fact that there was a review by the appeal board does not of itself furnish such a basis.

■ It is sheer sophistry to argue that the review by the appeal board is a *de novo* hearing in the accepted sense. The registrant has no opportunity to personally appear and present his views. All the appeal board does is review the registrant's Selective Service file. If that file reveals, as it does in this case, errors of law, the act of review alone does not "cure" those errors. Under the circumstances of this case, *i.e.*, an apparent and clear error in law applied initially by the local board, and no reason at all stated by the appeal board for its decision, I am of the opinion that review by the District Court is not only allowed, but is imperative to determine if the registrant was afforded due process of law. And the scope of review, then, of a District Court must include all the evidence presented at the trial, documentary evidence of the registrant's file, and the basis of the action of the local board as well as the appeal board, in order to fairly determine whether there is any "basis in fact" for the classification.

In this case, the government takes the position that there was a basis in fact upon which the local board and the state appeal board was warranted in denying the defendant's claim for exemption as a conscientious objector upon any one of the three tests which such a claimant must meet: the sincerity of his declared conviction; the nature of his religious beliefs; and unequivocal opposition to "war in any form." This Court, therefore, unlike the Court in *Curry,* has three points in issue before it and must examine the evidence as to each of these three points.

I find nothing in the file that would justify or serve as any basis for a judgment that the defendant is not sincere in his convictions. My examination of

the file on this question has been, in effect, a search for some indication or basis for a finding of insincerity. The file contains many communications sent from the registrant to the board and statements made by the registrant on Selective Service forms that point positively to a basis for finding that the defendant was sincere in his beliefs, and I find nothing that indicates that he was not sincere. There is no question that sincerity is an extremely subjective matter and the government may indeed be correct in its argument that the best evidence on this question is not the registant's statements, either written or oral, but rather his credibility and demeanor. I have observed his demeanor on the witness stand and can find nothing therein to serve as a basis to negate sincerity or credibility. The government urges that the appeal board could properly consider the fact that the registrant did not claim the status of conscientious objector until after he was classified I–A by his local board as bearing upon the question of his sincerity. While I consider such chronology extremely tenuous at best, this foothold for "basis in fact" dissolves completely upon examination of the defendant's Selective Service file because there is nothing therein to indicate whether or not the appeal board did in fact consider this chronology as indicative of anything. The fact of the matter is that there is nothing in the file at all to indicate that either the local board or the appeal board even considered the question of the defendant's sincerity.

United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), delineates the religious requirements that must be met in order to qualify as a conscientious objector under the Act. Although the defendant's beliefs do not fit within any traditional concept of religion, there is nothing in the file to indicate that he does not come either within the *Seeger* criteria or the terms of the Act itself as amended in 1967. While the defendant admittedly does not embrace a recognized or traditional reli-

gious faith, he did express in simple but rather eloquent words in his SSS 150 form a belief based upon the religions of India and he enumerates the main tenets of his belief as non-violence and selfless service to others. His entire file displays only his attempt to live up to these admirable religious ideals. The government points out that, while professing a belief that in order to live properly one must be a vegetarian, the defendant did not practice this belief entirely while he was in Africa because of food limitations. This deviation, if indeed it be that, from one tenet of his religious principles certainly cannot be the foundation for a finding that he did not in fact have firm religious beliefs and conviction.

Nor can I find anything in the file to indicate that the defendant is not opposed to war and the use of force under any circumstances. I can find no ambiguity or equivocation in the defendant's statements opposing war and violence. Indeed, I can find no inconsistency between the defendant's professed belief in non-violence and selfless service and the life that he has led for the last four years. The government puts great stress upon the fact that the defendant in a letter of March 14, 1968, stated: "I would much prefer to serve my government and country in the noncombative aspect to which I am inclined * * *." Gov't Exh. No. 1, Doc. 25. The next sentence in the same paragraph of that document, however, reads:

> Please don't misinterpret this as an expatriotic attitude for I have, as I mentioned, already loyally served my country as a volunteer and am perfectly willing to serve again, *but not militarily*. [Emphasis added.]

The government argues that the use of the word "noncombative" implicitly negates sweeping opposition to all wars as required by section 456(j) of the Act. I disagree. To accept such a contention would be to allow semantic technicalities to control over common sense, reason and logic. Even on a semantic basis, the government's contention must fail because it is to be noted that the defendant used the word "noncombative" and the phrase "but not militarily" in the same paragraph of the same letter as equivalents.

This Court can find no "basis in fact" for a determination either by the local board or the appeal board that this defendant's beliefs do not meet the statutory requirements necessary to establish the status of conscientious objector.

The defendant has also raised several due process administrative arguments and since the government has gone to some length and effort to meet these contentions, they will be discussed.

The defendant first cites the failure of the local board to consider his status in light of new facts which were not formerly considered when he was classified I–A. In particular, the defendant points to two letters received by the local board from him on July 29 and August 19, 1968. In the letter of July 29th, he stated that he was being considered for a position with IVS. Gov't Exh. No. 1, Doc. 49. The August 15th letter explained that his consideration by IVS for a position with them was being delayed because one of the more important required reference forms had not yet been returned from the Peace Corps. Gov't Exh. No. 1, Doc. 59. The defendant's Selective Service file is void of any action by Local Board No. 1 on these two letters. The evidence indicates that these letters were never considered at any formal meeting of the local board. Admittedly, these were letters *from the registrant* indicating only the fact that he was being *considered* for a position with IVS. And testimony at the trial and a letter dated December 10, 1968, in defendant's Exhibit No. E, indicates that the registrant was not in fact accepted by IVS until December 10, 1968, which was nearly three months after the effective date of the order to report for induction.

The issues which the defendant raises in connection with these letters are two: (a) whether the letters did in fact indicate status-changing facts; and (b)

whether or not the local board was required by statute and the regulations to formally consider these letters.

■ It seems clear that the letters contained information that might indicate a change in classification. The regulations require each classified registrant to report to his local board, in writing, any fact that might result in his being placed in a different classification. 32 C.F.R. § 1625.1(b). And,

> The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * *. 32 C.F.R. § 1625.2. ["When registrant's classification *may* be reopened and considered anew."] [Emphasis added.]

Immediately thereafter, § 1625.3 directs "When registrant's classification *shall* be reopened and considered anew." [Emphasis added.] Because section 1625.2 speaks in terms of "may," whereas 1625.3 uses the directive language "shall," the Court is of the opinion that 1625.2 is discretionary in application by the board. But, even though the board has discretion as to whether or not a registrant's classification should be reopened and considered anew, this does not negate the board's duty to at least *consider* "any fact that might result in the registrant being placed in a different classification." Consideration by the board will many times result in the preliminary determination that there is no reason for a reopening and reconsideration of the registrant's qualification, but such determination cannot be made without united consideration of the new facts by the board.

■ The Court can only assume that no such consideration was made by the defendant's local board of the two letters

as there is no mention of such action in the minutes of the meetings of the board for the months of July, August, or September of 1968.

There is a failure of due process by the local board if it fails to consider "any fact that *might* result in the registrant being placed in a different classification." This does not mean that the board must decide that the registrant's classification should be reopened and considered anew. It does mean that it must at least consider any facts that might lead to such action.

■ The defendant's second major claim of denial of administrative due process is that the local board never formally met and voted to select the defendant for induction. The defendant relies upon 32 C.F.R. § 1631.7(a):

> (a) When a call is placed . . ., each local board, . . . shall select and order to report for induction the number of men required to fill the call from among its registrants . . .. ["Action by local board upon receipt of notice of call."]

There is no doubt that Local Board No. 1, like most of the boards throughout the country, never selected the defendant for induction nor authorized the issuance of his particular order to report. On this issue, the First Circuit's decision of July 14, 1969, United States v. Powers, 413 F.2d 834, is not only timely, but controlling. I read the *Powers* decision as establishing as a matter of law that a clerk compiling the delivery list from a file containing the names of available and acceptable I–A registrants is performing a purely ministerial matter that in no way requires the action of the full board pursuant to section 1604.-52(c), where there is no irregularity, apparent or alleged, in the preparation of the file.

■ For the reasons stated herein, the defendant is acquitted and ordered discharged.