Gerald E. MAGARO, Plaintiff-Appellant,

v.

Major General Richard T. CASSIDY, Commanding General, USAADCEN & Fort Bliss, Fort Bliss, Texas and Stanley R. Resor, Secretary of the Army, Department of the Army, Washington, D. C., Defendants-Appellees.

No. 27940.

United States Court of Appeals, Fifth Circuit.

April 23, 1970.

Gerald E. Magaro, pro se, Maury Maverick, Jr., San Antonio, Tex., James M. Simons, Austin, Tex., for plaintiff-appellant.

Ted Butler, U. S. Atty., Warren N. Weir, Asst. U. S. Atty., San Antonio, Tex., for defendants-appellees.

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Magaro appeals from denial of his petition for a writ of habeas corpus. He contends that he should be released from military service because in several respects his local Selective Service board denied him due process of law in handling his case. We conclude that he was entitled to grant of the writ.

A chronology of his Selective Service file is necessary to understanding the case. Magaro registered with his local board in Halifax, Pennsylvania on March 10, 1961. In 1964 he was granted a II–S (student) deferment, which he retained until he graduated from law school in June, 1967 at which time his board classified him I–A.

In February, 1967 Magaro had written to his board requesting an indication of his probable draft status should he accept a judicial clerkship. In July, 1967 he requested what he termed an "appeal" from his I–A classification on the ground that he had enrolled in graduate law studies. In October of that year the local board received a letter from a naval recruiting station in Cleveland indicating that Magaro had applied for a commission.

In January, 1968 Magaro wrote the local board to investigate the possibility of a II–A (occupational) deferment for legal aid work which he had begun in Cleveland, noting also that he was taking night courses and that he "[had] been investigating various officer's programs in the Armed Forces." The local board forwarded Magaro's file to the appeal board for the district, which reviewed the local board's precedures and took no further action. In April, 1968 the local board informed him that his classification would not be reopened and that he would be retained in I–A.

On June 13, 1968 Magaro requested a change to II–A occupational deferment status on the basis of his beginning work with the VISTA program.[1] The body of this letter request is set out in the margin.[2] His appointment to VISTA was confirmed by a letter to the board from a branch chief of VISTA, Office of Economic Opportunity, on a letterhead headed "Executive Office of the President of the United States, Washington, D.C." The body of the letter appears in the margin.[3]

1. Volunteers in Service to America devote at least a year to work among the poor in various parts of the United States. The program is sponsored by the federal government.

2. "In accordance with the Selective Service law I am notifying you of a change in my occupational status. On June 10, 1968, I formally accepted an Invitation to Training as a VISTA Volunteer in a special VISTA/CAP PDP-Training program.

"The training program will commence June 27, 1968 at Denver, Colorado and will continue for a six week period. The length of service after training will be one year. The program is a cooperative effort with the Community Action Program of the Office of Economic Opportunity.

"At this time I am respectfully requesting an Occupational Deferment (II–A) for the 13½ months that I will serve in VISTA.

"A copy of this letter is being sent to VISTA headquarters so that a letter of confirmation of the above can be sent to you."

3. "This is to confirm that the above named registrant has accepted an appointment to a special training program for VISTA Service in Denver, Colorado. His training assignment begins on June 27, 1968 and will last for six weeks. During this time, he will be prepared through intensive training to work with the impoverished people in our Nation's communities.

"The selection of this appointee to enter VISTA Service was determined only after a thorough examination of his character, occupational and educational backgrounds. Based on our findings, we have assessed that the appointee possesses the qualities necessary for successful performance as a VISTA Volunteer. Because of the nature of their work, VISTA Volunteers are often called upon to become active in community

In a letter received by the Board on July 11, Magaro wrote that he had commenced his VISTA training in Denver in late June as planned. Nevertheless, on July 23, without having acted on the II–A request, the Board sent Magaro an order to report for induction on August 8. On July 27, immediately after receipt of the induction order, Magaro wrote the Board calling attention to the fact it had not acted on his request. The Board replied, explaining that it had not received verification from VISTA that he was in training and stating it would consider his request after receipt of verification. On August 14 an officer of VISTA wrote the Board verifying that Magaro had completed his training and had been assigned, and explaining what his duties would be. The Board received this letter on August 19. The body thereof is quoted in the margin.[4]

On August 21 the Board took up Magaro's request. It recited the facts revealed to it by his file. The latest item referred to was the notice from Magaro that he had commenced training for VISTA on June 27. The Board did not consider its subsequent notice to him that it required official verification of his training status, or the official verification written August 14 and received by it on August 19 which authenticated that he had completed training and had been assigned and fully described his duties.

The Board decided that "he should not be granted a deferment, and should be inducted into the service," stating "Members are in doubt as to the sincerity of Mr. Magaro's accepting the position with VISTA." Its conclusions are quoted in the margin.[5] On September 1,

leadership. In this vital capacity, they are expected to arrive at decisions that will not only affect the progress of the community to which they are assigned, but will also have a definite impact on the success of the nation's war on poverty.
"Upon completion of training, this appointee will be awarded a project assignment where he will work for one year."

4. "Mr. Gerald E. Magaro, Selective Service Number 36–55–43–76, has asked that I inform you of this status and assignment as a VISTA Volunteer. Mr. Magaro has just completed a special VISTA training cycle held in Denver, Colorado, which consisted not only of the regular VISTA training but a special component known as Planning Development Program (PDP).
"As you know, Mr. Magaro is also a lawyer registered with the Ohio Bar Association. His assignment will be in Fort Stockton, Texas, where he will serve as Legal Advisor to a local community action program and a group of Mexican-American people who are developing a 221–H Self-Help Housing Project in coordination with the Federal Housing Administration. In addition, Mr. Magaro will be on call to several other VISTA projects in the Big Bend Area of Texas. He will be filling a critical need for legal services in this area, and I feel that he will be able to

make a significant contribution in the long-range planning and development of housing for low-income Mexican-American families in this area. I would, therefore, appreciate your consideration of his request for deferment.
"I am enclosing for your information a brief description of the role of the Volunteer-Planner which will give you some idea of Mr. Magaro's role as a PDP Volunteer."

5. "Members are in doubt as to the sincerety [sic] of Mr. Magaro's accepting the position with VISTA. When he first applied for deferment, he was working with the Legal Aid Society in Cleveland, Ohio. When he learned he would not be deferred for that position and after being found qualified for Induction, he accepted an offer with VISTA. Mr. Magaro's job with the Legal Aid Society was also helping and assisting the poor, yet when he was not deferred for this job, he did not hesitate to leave it and enter VISTA. Therefore, the members just do not feel he is actually sincere in job and do not feel he should be deferred.
"The members further stated this young man has been given deferments to enable him to receive his law degree, which many other young men, due to the present Selective Service Regulations, will not be entitled to. Therefore, it is the feeling of the members that since Mr. Magaro has been given several defer-

1968 Magaro requested a personal appearance to explain his case. The local board did not act on that request.

By order of the National Director, Magaro's case was appealed to the National Selective Service Appeal Board. On November 18 the National Board, by a 3–0 vote, continued Magaro in I–A.

Magaro subsequently submitted to induction at San Antonio, Texas. He filed the instant petition in federal district court, and it was denied after a hearing. This appeal followed.

The trial court held that the local board was under no obligation to reopen and reconsider Magaro's classification when presented with his request for a VISTA deferment, and that at any rate any error by the local board was corrected by the appeal to the National Selective Service Appeal Board. The applicable regulation on reopening provides that:

> The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided, * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.

32 C.F.R. § 1625.2.

■ The trial court's order construed the regulation as follows:

> The provision with respect to the reopening and reconsideration of a classification is not couched in mandatory terms * * *. The Local Board was therefore not under a positive obligation to reopen petitioner's classification.

The fact that the language of the regulation is not mandatory does not place local board denials of reopening beyond challenge in a criminal prosecution or habeas corpus proceeding. In the ancient case (in the context of the draft laws) of United States v. Vincelli, the Second Circuit stated:

> Though the language in the regulation is permissive merely that does not mean that a local board may refuse to reopen arbitrarily, but requires it to exercise sound discretion. That, in turn, requires, when the basis of an application is not clearly frivolous, an inquiry designed to test the asserted facts sufficiently to give the board a rational base on which to put decision.

215 F.2d 210, 212–213, modified, 216 F.2d 681 (2d Cir. 1954).

Similarly, this court, in Olvera v. United States, 223 F.2d 880 (5th Cir. 1955), held that due process requires that selective service processing regulations, even though phrased in permissive terms, must be applied even-handedly; and that an "arbitrary and unreasonable" refusal to reopen is a good defense to a conviction.[6]

---

ments and afforded the opportunity to receive his degree, and the fact that he left the Legal Aid Society after not being deferred for that position, he should not be granted a deferment, and should be inducted into the service."

6. Later courts have still further refined the *Olvera* test and the companion, "abuse of discretion" test, Townsend v. Zimmerman, 237 F.2d 376 (6th Cir. 1954). Many courts have stated that local boards are under a duty to reopen where the registrant presents a prima facie case for a new classification. See, *e. g.*, Howze v. United States, 409 F.2d 27 (9th Cir. 1969). Cases holding that a local board erred in failing to reopen because it had a duty to do so when faced with a prima facie case, or because it abused its dis-

■ Magaro presented facts supporting all three necessary elements of a II–A claim.[7] United States v. Kanner, 416 F.2d 522 (9th Cir. 1969); Petrie v. United States, 407 F.2d 267 (9th Cir. 1969). The local board's actions, as the trial court recognized, amounted to a denial of reopening. The board finding that Magaro should be retained in I–A because he was not sincere amounted to a determination that Magaro had not presented "facts * * * which, if true, would justify a change in the registrant's classification" under the reopening regulations. *Cf.* United States v. Longworth, 269 F.Supp. 971 (S.D. Ohio 1967).

When, on August 21, it considered Magaro's request for a reopening, the local board had before it facts which made it arbitrary and unreasonable for it to refuse to reopen to consider the II–A claim. See Shook v. Allen, 307 F. Supp. 357 (N.D.Ohio 1969); United States ex rel. Chance v. Tolson, 312 F. Supp. 1384 (E.D.N.C.1969). As to his engagement in VISTA activity, Magaro informed the board before his induction order was sent that he was in training, and at the board's request the VISTA regional program officer later notified them that Magaro had completed training and was commencing work on his specific assignment.[8] As to the difficulty of replacing him, the letter from the Executive Office of the President indicated that he had been chosen only after a careful selection process and was undergoing "intensive training." As to the related standard of material loss of effectiveness, the August 14 letter from the regional program officer indicated that he had been given specialized training and would be fulfilling "a critical need for legal services in this area."

cretion, or because it acted arbitrarily, are by now myriad, and cut across a broad spectrum of claims.

I–O (conscientious objector) claims: Davis v. United States, 410 F.2d 89 (8th Cir. 1969); Mizrahi v. United States, 409 F.2d 1219 (9th Cir. 1969); Vaughn v. United States, 404 F.2d 586 (8th Cir. 1968); United States v. Freeman, 388 F.2d 246 (7th Cir. 1967); United States v. Naves, 304 F.Supp. 230 (D.Colo.1969); Barker v. Hershey, 309 F.Supp. 277 (W.D.Wis.1969); United States v. Prescott, 301 F.Supp. 1116 (N.H.1969).

I–S (student) claim: United States v. Rundle, 413 F.2d 329 (8th Cir. 1969).

III–A (hardship-dependency) claims: United States v. Grier, 415 F.2d 1098 (4th Cir. 1969); Petrie v. United States, 407 F.2d 267 (9th Cir. 1969) (en banc); Lewis v. Secretary, Dep't of the Army, 402 F.2d 813 (9th Cir. 1968); Radel v. Commanding Officer, 312 F. Supp. 1300 (E.D.Pa.1969); United States v. Santos, 2 S.S.L.R. 3429 (C.D. Cal.1969); United States ex rel. Chance v. Tolson, 312 F.Supp. 1384 (E.D.N.C. 1969); Rheingans v. Clark, 1 S.S.L.R. 3380 (N.D.Cal.1968); United States ex rel. Wilkerson v. Commanding Officer, 286 F.Supp. 290 (S.D.N.Y.1968); United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y.1966).

IV–D (ministerial) claims: Brown v. United States, 216 F.2d 258 (9th Cir. 1954); United States v. Pollero, 300 F. Supp. 808 (S.D.N.Y.1969); United States v. Simms, 285 F.Supp. 981 (D.Del. 1968); United States v. Singleton, 282 F.Supp. 762 (S.D.N.Y.1968); United States v. Garcia, 1 S.S.L.R. 3016 (C.D. Cal.1968); United States v. Hestad, 248 F.Supp. 650 (W.D.Wis.1965); United States v. Scott, 137 F.Supp. 449 (E.D. Wis.1956).

7. 32 C.F.R. § 1622.22(a) provides: "In Class II–A shall be placed any registrant whose employment in industry, or other occupation or employment * * * is found to be necessary to the maintenance of the national health, safety, or interest." Section 1622.23 requires in this connection findings that:

"1. The registrant is * * * engaged in such activity.

2. The registrant cannot be replaced because of a shortage of persons with his qualifications or skill in such activity.

3. The removal of the registrant would cause a material loss of effectiveness in such activity."

8. The local board was not barred by the proviso to § 1625.2 from considering this letter, which arrived after the induction notice was mailed. The local board had specifically requested confirmation of Magaro's status as a prerequisite to consideration of his request. United States v. Prescott, *supra.*

The second letter also contained an imposing list of Magaro's tasks. That his work was in the national interest is beyond question. These submissions required "an inquiry designed to test the asserted facts sufficiently to give the board a rational base on which to put decision." United States v. Vincelli, *supra*, 215 F.2d at 213. Yet the local board ignored all this evidence and relied on a factor irrelevant to the claim of occupational deferment.

 The trial court held that this was a proper case for application of the doctrine that local board errors are presumed corrected by appeal, which in the Selective Service System involves *de novo* consideration of the registrant's file, Clay v. United States, 397 F.2d 901, 912–913 (5th Cir. 1968), and cases cited therein.[9] We conclude otherwise. The effect of the local board's decision not to reopen was to cut off Magaro's right to a personal appearance, at which he could

> discuss his classification, * * * point out the class or classes in which he thinks he should have been placed, * * * direct attention to any information in his file which he believes the local board has overlooked or to which it has not given sufficient weight, and * * * present such further information as he believes will assist the board in determining his proper classification.

Knox v. United States, 200 F.2d 398, 399 (9th Cir. 1952), quoting former provisions of 32 C.F.R. § 1624.2(b). *Accord,* United States v. Peebles, 220 F.2d 114, 119–120 (7th Cir. 1955); United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3d Cir. 1953); Mintz v. Howlett, 207 F.2d 758 (2d Cir. 1953); United States v. Longworth, *supra*. *Cf.* United States v. Burlich, *supra*. Also see Parrott v. United States, 370 F.2d 388 (9th Cir. 1966); United States v. Majher, 250 F.Supp. 106 (S.D.W.Va.1966). Since his local board's decision rested on irrelevant considerations rather than on

a weighing of the merits of his claim, Magaro was denied a meaningful appraisal of his request by the citizens of his own community. Knox v. United States, *supra*, 200 F.2d at 402. *Cf.* United States v. Peebles, *supra*. This factor is of special importance in claims for occupational deferment.

Our disposition of this appeal makes it unnecessary for us to consider the other issues raised by appellant.

The judgment below is reversed and remanded for grant of the writ.

---

9. But see United States v. Atherton, 2 S.S.L.R. 3334 (9th Cir. 1969); United States v. Prescott, *supra*.